H. I. JOSEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88190. Promulgated September 8, 1938.

*R. W. Fowler, Esq.*, for the petitioner.
*Stanley B. Anderson, Esq.*, for the respondent.

OPINION.

DISNEY: This proceeding involves income tax liability for the taxable year 1934, as to which respondent determined a deficiency of $983.03, based on the receipt of $10,000 income by petitioner in consideration of cancellation of a sublease. Petitioner contends that he received no income from such source for the reason that the cancellation of the sublease caused him a loss greater than the amount received.

The facts have largely been stipulated, and such stipulation is adopted as findings of fact by reference, without incorporation herein except in so far as necessary for discussion of the issues; and we add findings not covered by the stipulation as follows: The highest annual rental that could have been obtained for a lease identical with the one held by D. A. Schulte, Inc., upon April 13, 1934, the date of cancellation of the Schulte lease, was $15,780. Petitioner canceled the Schulte lease because he needed the money very badly. The written stipulation was corrected by agreement during hearing in the following particular: The amount of $20,988.37 stated as rent income for 1934 was corrected to be $5,629.66 less (i. e., $15,358.71).

Petitioner received net income of $4,292.85 for the remainder of the year 1934, $4,865.72 for the year 1935, and $2,387.90 for the year 1936.

The issue here is whether cancellation by the lessee of a sublease under which he would not receive income until nearly three years in the future, caused a deductible loss, or whether cash received for such cancellation is income in full.

The facts necessary to an understanding of the issues herein may be briefly stated: Petitioner in 1928, purchased for $50,000 a half interest in a 99-year lease, executed in 1918, under which the lessees had in 1921 subleased the premises to D. A. Schulte, Inc., for the entire unexpired term of the lease. The annual rental to be paid by D. A. Schulte, Inc., was $22,500 in addition to paying taxes, charges, assessments, upkeep, reconstruction cost, and maintenance, the $22,500 per year to be net to the lessees, except that therefrom $9,000 per year was to be paid to the fee owners of the property, and $13,500 to the lessees subleasing (or their assignees, including petitioner). Prior to petitioner's acquisition of the one-half interest in the lease, D. A. Schulte, Inc., had prepaid the rent up to December 31, 1936. Petitioner and one Perlstein (the owner of the other half interest in the lease) were therefore to receive no rents upon the property until after December 1, 1936. In April 1934 petitioner,

badly needing money, with his coowner Perlstein, released D. A. Schulte, Inc., from the terms of the lease in consideration of $20,000 cash, the surrender of the property to them, and the payment by D. A. Schulte, Inc., of 1934 taxes in the amount of $5,629.66, and three-fourths of the $9,000 ground rent due for the year 1934 to the owners of the property. In April 1934 the highest annual rental which could have been obtained from a responsible tenant under a lease identical with the lease to D. A. Schulte, Inc., was $15,780. Petitioner received from the property, from cancellation of lease to January 1, 1937, a total net income of $11,546.47.

Under these circumstances, petitioner contends, relying largely upon *Commissioner* v. *Langwell Real Estate Corporation*, 47 Fed. (2d) 841, that he had no income from the $10,000 received by him as consideration for cancellation of the lease because the cancellation resulted in a loss to him in a larger amount. In effect, he admits that he had $10,000 income, but seeks to establish an offsetting loss of a greater amount. He adduces evidence that an identical lease, at date of cancellation, would produce only $15,780 per year, and argues therefrom that the net rent payable by D. A. Schulte, Inc. (after December 31, 1936), being $22,500 per annum, the difference between $22,500 per year and $15,780 per year is the basis for computation of loss to him and his colessor, for a period of the 81 years the lease yet had to run from 1934. He makes it plain that he is claiming, not a loss of 1934 rent, but of "the April 1934 value of the entire 81-year sublease obligation", which he says was greater than $50,000, the cost of the lease to petitioner. He admits on brief that the leasehold has increased in value since April 1934, and states that it is now returning petitioner about one-half of the amount that D. A. Schulte, Inc., would be paying him if no cancellation had taken place and that "It is also true that in the future petitioner may possibly recoup a part or even all of the loss which occurred in April 1934", but argues that this does not change the fact that the loss has occurred. He cites also, among other cases, *United States* v. *White Dental Manufacturing Co.*, 274 U. S. 398, to the effect that a taxpayer need not be an incorrigible optimist.

Although taking cognizance of the language of *Commissioner* v. *Langwell Real Estate Corporation, supra,* we think petitioner's contention is not sound. He made a capital investment of $50,000 in a half interest in a lease; he still owns that interest in the lease. Had it been canceled by his own landlord, the fee owner, so that his rights had terminated, clearly loss would have been sustained. But, in the face of the fact that ordinarily a capital investment results in loss only when it is terminated by some definite event, such as sale, destruction or abandonment, can it be said that petitioner suf-

fered a loss by the cancellation of the sublease contract, at a time when it could be duplicated only by accepting a lower rental? The lease had 81 years to run. He had lost a tenant, but was there such a closed transaction, that recoupment of loss was so impossible that the loss upon the entire life of the lease was realized in 1934? We think not. Cases such as *United States* v. *White Dental Manufacturing Co.*, *supra*, do not assist us, for there is a wide difference between reliance upon the volition of a then hostile foreign government to make restitution of loss, and relying upon one's own opportunities in the future to rerent property which is in the immediate possession of the petitioner. A loss must usually be established by a closed transaction, *Ewing Thomas Converting Co.* v. *McCaughn*, 43 Fed. (2d) 503; certiorari denied, 282 U. S. 897. It can not be taken because of disappointment in profits expected and mere loss of income does not usually give right to deductible loss. *Henry C. Taylor*, 34 B. T. A. 241; *Frank F. Nicola*, 1 B. T. A. 487; *John F. Blanchard*, 17 B. T. A. 1271. Here petitioner alleges at most loss of anticipated income and profits—which did not even begin until almost three years later, he having no right to receive current income from the sublease. To show a definite and closed event evidencing deductible loss, there must be absence of reasonable possibility of recoupment. *W. H. Dail, Jr.*, 19 B. T. A. 1036. If future events may reduce the loss, it is not an identifiable event sufficient to establish deductible loss, *John C. Shaffer*, 28 B. T. A. 1294; and there should be demonstration that there is no reasonable possibility of such changed conditions in the future as will reimburse for loss, as otherwise obviously there is a mere diminution or depreciation in value shown. It seems to us not only that such reasonable possibility of recoupment or reimbursement has not been negatived by petitioner here, but that, on the contrary, the certainty of recoupment at least in part has been shown, since it is plain that the value of the sublease was not entirely destroyed, but only depreciated in part, since the benefit of tenancies from the sublessee to its tenants was assigned to petitioner and it is affirmatively shown that the future did bring partial recoupment. The record shows that petitioner received total net income of $11,546.47 during 1934, 1935, and 1936, in the interim between cancellation of the D. A. Schulte, Inc., sublease and December 31, 1936, the first date upon which under said sublease petitioner could have realized any income whatever. Under the Schulte lease, he would have received no part of this sum. In other words, on January 1, 1937, he had received, upon his $50,000 investment, $21,546.47 and had a lease with a life of over 77 years, which during 1935–1936 had yielded a net income to him of $3,626.81 per year. This demonstrates to a reasonable certainty not a deductible loss, but a profit

upon his investment. It is impossible, we think, in the face of this record, to arrive at a definite or even a probable loss from the cancellation of the Schulte lease upon petitioner's investment of $50,000. One needs only to capitalize the average net rents received by him after the cancellation of the lease to see that petitioner will not suffer loss on his investment, or, to say the least, has not so demonstrated.

This makes clear, we think, the error in petitioner's approach to this problem; for he does not, in effect, claim loss upon his investment of $50,000 in a lease, but upon the difference between the expected or anticipated profit therefrom (under the Schulte sublease) and the amount to which that profit diminished (under the estimate of a future income of $15,780 per year instead of the $22,500 agreed to be paid by D. A. Schulte, Inc.). This makes it clear that what he is in fact claiming is a loss or disappointment in anticipated profits from the sublease, or otherwise viewed, a mere diminution in value, not a destruction or total loss, of his lease. He does not claim a total loss on the lease; yet his investment was in the lease, which he still owns, and not in the sublease. As owner of the lease, he plainly has not shown a loss taken; as proprietor of the sublease, he shows merely a possible failure to realize what he expected as income therefrom. When we add the plain possibility of recoupment, even of large profits, by future change of conditions, we must conclude that petitioner has demonstrated no deductible loss.

The cases relied upon do not, in our opinion, meet or solve the question here presented. The nearest approach, and that upon which petitioner apparently relies with most confidence, is *Commissioner* v. *Langwell Real Estate Corporation, supra.* Therein the owner of real estate, in effect, received $50,000 consideration for canceling a lease. Unlike the petitioner here, he had a right to receive current rents from the property. His investment was in the property, not, as herein, in the lease alone. There was no such showing, as herein made, of no present profit being possible and the definite postponement to the future of any such profits. Petitioner had a contingent liability to return to the lessee a deposit of $50,000, the contingency being the performance of conditions of the lease by lessee, which balanced the obligation to return the deposit. The Board held that the release of such deposit to petitioner, balanced as it was by release to the lessee of his liability to petitioner under the lease, was not shown to be income. Upon appeal, the Circuit Court held that it was income, and going further, held that the matter of loss was not an issue covered by the findings of the Board, and that a loss would be sustained by the petitioner if a lease as favorable as the one canceled could not be made by petitioner. It thus appears from the language of the court that the issue squarely presented herein was

not an issue litigated and presented to the Board and the Circuit Court in the above case. Considering the differences in fact, in the two cases and the apparent lack of presentation in the cited case of the problem confronting us herein, we feel, with all respect to the court deciding the above case, that it does not resolve the question here, and we do not therefore follow the cited case. Here we find, in our opinion, a clear case of loss claimed upon profits anticipated or expected at a future time, and no showing of present loss upon investment.

We therefore hold that no deductible loss was sustained by petitioner in 1934 by cancellation of the sublease involved in this proceeding, and that the $10,000 admittedly received by petitioner in that year constituted income to him, and the deficiency determined by the respondent is accordingly approved.

*Decision will be entered for the respondent.*