WALTER M. HORT, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 89033.    Promulgated May 19, 1939.

*Edwin Hort, Esq.*, for the petitioner.
*F. S. Gettle, Esq.*, for the respondent.

OPINION.

MURDOCK: The parties are in agreement that the petitioner sustained a capital loss of $167,535.25 from the sale of the two properties to the corporation. The petitioner contends that the loss was sustained in the calendar year 1933, whereas the respondent contends that it was not sustained until 1934. The court said in *Commissioner v. Union Pacific Railroad Co.*, 86 Fed. (2d) 637:

A closed transaction for tax purposes results from a contract of sale which is absolute and unconditional on the part of the seller to deliver to the buyer a deed upon payment of the consideration and by which the purchaser secures immediate possession and exercises all the rights of ownership. The delivery of a deed may be postponed and payment of part of the purchase price may be deferred by installment payments; but for taxing purposes it is enough if the vendor obtains under the contract the unqualified right to recover the consideration.

The evidence in the present case shows that the sale actually took place in 1933. The corporation accepted the petitioner's offer, deeds conveying title were delivered, the capital stock of the corporation was delivered to the petitioner as security for the payment of the purchase price, and the corporation took possession of the properties on December 28, 1933. The petitioner was then committed absolutely to the transaction, and he sustained the loss at that time.

The respondent contends that the evidence fails to show delivery of the stock to the petitioner during the year 1933. The petitioner did not state specifically the exact time at which he received the stock. The contract provided that the stock was to be delivered at the time of the delivery of the deeds. The deeds were delivered on December 28, 1933. The petitioner testified that he received the stock, and he further testified that the only modification of the contract was the extension of the time for payment of the first installment of the purchase price. The finding has therefore been made that he received the stock on December 28, 1933. But the result would be no different if he had not received the stock on that date. The payment of the first installment of the purchase price was not a con-

dition precedent to the sale. The petitioner expressly provided when he extended the time for payment that it was not to affect the sale on December 28, 1933. He unqualifiedly parted with his property in that year and received in exchange a right to receive the purchase price. The Commissioner erred in disallowing this item as a loss for 1933. Cf. *Henry F. McCreery*, 4 B. T. A. 967; *A. H. Fell*, 7 B. T. A. 263; *Dee Furey Mott*, 35 B. T. A. 195; *C. R. Dashiell*, 36 B. T. A. 313; affd., 100 Fed. (2d) 625; *Huntington National Bank, Trustee*, 32 B. T. A. 342; affd., 90 Fed. (2d) 876; *Schoellkopf Aniline & Chemical Works, Inc.* v. *United States*, 77 Ct. Cls. 529; *Standard Lumber Co.*, 28 B. T. A. 352; *Davidson & Case Lumber Co.* v. *Motter*, 14 Fed. (2d) 137.

The remaining question is to determine the income tax consequences of the payment to the petitioner of $140,000 by the trust company in cancellation of the lease on the petitioner's property. The petitioner contends that he sustained a loss on the cancellation of the lease. He claims his loss is the difference between the total rent payable under the lease for the unexpired term and the probable total rental which might be obtained for that period from other tenants. There are several reasons why the petitioner is not entitled to deduct that amount or any other as a loss in computing his income tax liability for the calendar year 1933. The alleged loss as described by the petitioner represents only the amount of earnings which he expected to obtain from the use of his property but which he probably will never receive. A mere reduction in the amount of income to be expected does not give rise to a deductible loss. *Frank F. Nicola*, 1 B. T. A. 487; *John F. Blanchard*, 17 B. T. A. 1271; *H. I. Josey*, 38 B. T. A. 497. Failure to prove the present value of the future payments under the lease at the close of 1933 and the then value for rental purposes of the first floor and basement for a similar period independent of the lease is of no consequence. Comparison of those two figures would show the then value of the lease or the probable loss of future earnings which the petitioner could expect as a result of the cancellation of the lease, but such a comparison would not show any figure important in the computation of any loss for income tax purposes.

The petitioner has failed to prove any figures from which a loss could be computed. A loss from the disposition of property is computed for income tax purposes by deducting the amount realized from the adjusted basis. The amount realized from the cancellation of the lease was $140,000. Basis is always cost or some substitute therefor authorized by the revenue act. Where, as here, property was acquired by bequest in 1928, the basis would be the fair market value

of the property in 1928. The evidence does not show any separate basis for the lease in question in the hands of this petitioner or that the lease had any value in itself at the time that the property was acquired by this petitioner. Certainly there is no reason to believe that the lease had a value at that time which, after adjustment for exhaustion up to the close of 1933, would exceed $140,000, the amount realized. The land and building had a basis for gain or loss in his hands. But he did not dispose of that property, and he sustained no loss in regard to it. Even if there was a shrinkage in the value of that property, he would still not be entitled to any loss on that account. Thus, even if on some theory the petitioner might be entitled to a loss, nevertheless, he has failed to prove that in fact any loss was sustained.

This lease cost the petitioner nothing and we must assume, in accordance with the Commissioner's determination, that it had no basis in his hands for gain or loss. The payment of $140,000 which he received was income. *H. I. Josey, supra.* Cf. *Langwell Real Estate Corporation,* 47 Fed. (2d) 841, reversing 17 B. T. A. 196.

The final argument of the petitioner is that if the $140,000 was income, it was capital gain rather than ordinary income. Capital gain is defined in section 101 (c) (1) of the Revenue Act of 1932 as a gain from the sale or exchange of capital assets. A sale or exchange involves a transfer of property in goods. Williston on Sales (2d Ed.), vol. 1, ch. 1. Here the lease was extinguished, not sold or exchanged. The lessee did not acquire any valuable asset but merely obtained a release from his liabilities under the lease. The Supreme Court has held recently in *Fairbanks* v. *United States,* 306 U. S. 436, that "payment and discharge of a bond is neither sale nor exchange within the normally accepted meaning of the words" and the gain derived from the redemption of bonds is not a capital gain. Likewise, it has been held that the settlement of a note for less than its face value is not a sale or exchange and does not give rise to a capital loss. *Hale* v. *Helvering,* 85 Fed. (2d) 819. Similar holdings have been made in regard to the voluntary surrender of a life insurance and annuity contract and in regard to liquidated damages for failure to perform a contract for the purchase of stock. *Frank J. Cobbs,* 39 B. T. A. 642; *George A. Hellman,* 33 B. T. A. 901; *A. M. Johnson,* 32 B. T. A. 156. Cf. *James R. Stewart,* 39 B. T. A. 87. Neither business men nor lawyers refer to the cancellation or forfeiture of a lease for a consideration as a sale or exchange. The $140,000 received by the petitioner is not capital gain but is taxable to the petitioner as ordinary income. *H. I. Josey, supra.*

*Decision will be entered under Rule 50.*