CENTER INVESTMENT COMPANY, PETITIONER, *v*. COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 82350.    Promulgated December 10, 1940.

*W. S. Greathouse, Esq.*, and *D. G. Eggerman, Esq.*, for the
petitioner.

*F. S. Thompson, Esq.*, for the respondent.

OPINION.

Opper: Petitioner being chargeable as income in the year of forfeiture with the value of the building erected on its land by the tenant, *Helvering* v. *Bruun, supra*, the first question to be determined is the measure of the income thus received by it; that is to say, the value at that time of the part of the building on its lot, which is the only portion of the structure as to which respondent contends that the forfeiture created taxable income. The sole evidence of this value was submitted by petitioner at the hearing in the form of testimony of experts as to cost of replacement. Such replacement cost seems to us, particularly in the absence of any contradictory facts, the nearest approach possible to the ascertainment of market value, if indeed it is not exactly that; for our problem is to determine the value of the building as an item separate from the land and it seems fair to assume that the value of the property as a whole would exceed the value of the land alone by the amount which would be required to place upon vacant land a building of the same character.

On the whole record, we have found as a fact that the value in question was $57,600, arrived at by deducting from $60,000, our conclusion as to the value of a new building, depreciation of $2,400 computed for 2 years of a 50-year life. The undepreciated value is based not so much upon the conclusion testified to by either of the petitioner's witnesses as it is upon figures which each endorsed in the course of his testimony. According to a computation from evidence of one witness the 1932 value would be $64,820 and of the other, $59,141.44. These figures are arrived at by us, as they were by one of the witnesses, by reducing $213,399.50, the stipulated actual cost of the building covering petitioner's lot and the one next to it, by 25 percent, a decrease which both witnesses agree had occurred in building costs between the date of erection and the date of forfeiture; and then by attributing to that part of the building on petitioner's lot, the value of which is the issue, the

proportion of the resulting total which the area of that lot, as computed by the one witness, or the cubic content of the building thereon, as computed by the other, bore to the total. We are satisfied that this is a reasonably satisfactory method of arriving at the value of the part of the building with which we are here concerned and for this reason have adopted the figure mentioned as approximately equaling the results arrived at by the two witnesses.

In each case, however, the witnesses proceeded to deduct the amount of $18,375 from the value so fixed because in their opinion that would be the cost of a partition separating the part of the building on petitioner's lot from the remainder. This deduction we do not believe to be justified. There seems no quarrel with the conclusion that the two parts of the building were of greater value and more likely to be economically productive, if operated as a unit. While petitioner did not own the adjoining lot or the building thereon, it was in possession of them under a long-term lease, was itself operating the structure as a unit, and would have been able to dispose of it as such. The expenditure of $18,000 to partition the building, far from increasing the value of the entire property, would therefore have the opposite effect. And no convincing reason is apparent why it was necessary to assume at the time of forfeiture that this would have to be done. True, petitioner was having some difficulty with its landlord under the lease of the adjoining property. But if, as seems conceded, the building as a unit was of greater value than the sum of the two parts, it was to be expected that there would be, as in fact there was, a method by which such differences could be accommodated. We are accordingly of the opinion that cost of replacement of the building need not be diminished, in order to determine its market value, by the bare possibility that at some time in the future a partition would become necessary.

The further question is whether certain securities originally the property of petitioner's lessee, which were deposited by the latter as security to cover the cost of possible future construction of such a partition as called for by its lease with petitioner and by petitioner's lease with its landlord, were income to petitioner to the extent of their value at the time of forfeiture.

It is provided by the forfeited lease: "In case of a forfeiture of this lease the lessor shall have the right * * * to said securities, and lessee's rights therein shall terminate." Under these circumstances we may assume that there would be little question as to the necessity of including their value in petitioner's income for the year of forfeiture, under the principles of *Commissioner* v. *Langwell Real Estate Corporation* (C. C. A., 7th Cir.), 47 Fed. (2d) 841, and, indeed, of *Helvering* v. *Bruun, supra*, were it not for the additional factor that the securities, instead of being delivered to petitioner, were retained under the continuing provisions of its lease of the adjoining property. Petitioner

contends that this prevented it from obtaining such rights of ownership and possession as justify regarding the forfeiture of the securities as income to it.

It seems to us, however, that the balance is clearly in favor of respondent's position. The mere fact that the securities were retained by a third person and that possession was withheld under an agreement similar to a pledge is insufficient to warrant the conclusion that petitioner's receipt of title to the securities did not constitute income. *Bonham* v. *Commissioner* (C. C. A., 8th Cir.), 89 Fed. (2d) 725; *Rodrigues* v. *Edwards* (C. C. A., 2d Cir.), 40 Fed. (2d) 408. Such cases as *Stoner* v. *Commissioner* (C. C. A., 3d Cir.), 79 Fed. (2d) 75; certiorari denied, 296 U. S. 650, are distinguishable on the ground that there the transaction was conditional and that it was impossible to say whether in fact title would ever pass. See *Luther Bonham*, 33 B. T. A. 1100, 1106; affd., *Bonham* v. *Commissioner*, *supra;* *Gwinner* v. *Heiner*, (C. C. A., 3d Cir.), 114 Fed. (2d) 723.

Under the arrangement before us it seems evident that petitioner became entitled as a result of the forfeiture to all of the attributes of ownership of these securities. Not only was title conferred upon it by the terms of the lease when the forfeiture occurred, but the same lease, coupled with petitioner's lease of the adjoining property, gave it the immediate right thereafter to the interest or dividends thereon. It was permitted to obtain physical possession of the securities at any time upon deposit of substitutes. This renders particularly apt a quotation from *Luther Bonham*, *supra:* "Ownership of this stock had passed to the petitioner and he was exactly in the same situation as if other securities had been deposited in the place of the 750 shares * * *." Or petitioner could have obtained the benefit of a sale of the property subject to the pledge, *Rodrigues* v. *Edwards*, *supra*. And even the fact that these securities were deposited in pledge is of itself suggestive that they were not only petitioner's property, but constituted its income. For the pledge was in connection with an obligation which, after the forfeiture, was solely that of the petitioner itself. *Warren Service Corporation*, 39 B. T. A. 856; affirmed on this issue (C. C. A., 2d Cir.), 110 Fed. (2d) 723. Consequently, the fact that petitioner's obligation of deposit was discharged by what had previously been the property of another, *United States* v. *Hendler*, 303 U. S. 564; *Helvering* v. *Blumenthal*, 296 U. S. 552, or, although part of the stipulated consideration for the rental of petitioner's property did not pass into its hands, *United States* v. *Boston & Maine Railroad*, 279 U. S. 732, would not justify us in failing to treat this as petitioner's income. Since these benefits flowing from the securities came to petitioner as a result of the forfeiture, they must, under the doctrine of *Helvering* v. *Bruun*, *supra*, be considered income in the year the forfeiture took place.

50

The suggestion in the *Langwell* case that petitioner should be permitted to set off against the value of the security any loss it suffered by virtue of its tenant's default seems to us inapplicable here. For the securities were deposited in the first instance not to secure generally the performance by petitioner's tenant under the lease, but to guard against a specific contingency, namely, that a partition of the building would become necessary. In the *Langwell* case the tenant's default under the lease, which was itself the event against which the security was deposited, might have furnished an offset to the value to the lessor of the security which he obtained. But see *Warren Service Corporation, supra; Walter M. Hort*, 39 B. T. A. 922; affd. (C. C. A. 2d Cir.), 112 Fed. (2d) 167. This factor is absent here because no default had yet occurred in the obligation for the performance of which the security was furnished. When and if it became necessary for petitioner to perform that obligation and defray the cost of partitioning it could perhaps claim the loss resulting therefrom. But it is not an offset to the value of the securities at the time of forfeiture, because that condition did not follow from it, had not yet occurred, and might never occur. And respondent has already allowed petitioner the benefit of a deduction for the unamortized cost of the lease which is the extent of petitioner's claimed loss, apart from anticipated profits. *Walter M. Hort, supra; H. I. Josey*, 38 B. T. A. 497; affd. (C. C. A., 10th Cir.), 104 Fed. (2d) 453. For the reasons we have discussed, we sustain respondent's action in charging petitioner with income to the extent of the value of the forfeited securities.

*Decision will be entered under Rule 50.*