Strickler Company v. Commissioner.
Strickler Co. v. Commissioner
Docket Nos. 699, 700.
United States Tax Court
1944 Tax Ct. Memo LEXIS 72; 3 T.C.M. (CCH) 1131; T.C.M. (RIA) 44344; October 25, 1944
*72 George Bouchard, Esq., 458 S. Spring St., Los Angeles, Calif., for the petitioner. Harold D. Thomas, Esq., for the respondent. HILL
Memorandum Findings of Fact and Opinion HILL, Judge: These proceedings involve proposed deficiencies as follows: Excess-
Declared Value
Income Tax
Profits Tax
Excess-Profits Tax
Docket No. 699
Year 1937
$26,691.50
$7,434.86
Docket No. 700
Year 1938
$ 2,060.65
Year 1939
8,395.44
$227.18
Year 1940
3,144.47
$ 932.14
The deficiencies for the years 1938, 1939 and 1940 are proposed by the Commissioner only in the event that there is held to be no deficiency for the year 1937. The case was tried on a stipulation of facts and oral and documentary evidence. The single issue is whether the amount of a judgment represents taxable income and, if so, the year or years in which it is taxable. All other issues have either been abandoned or settled by stipulation. Findings of Fact Petitioner is a California corporation having its office and place of business in Los Angeles, California. It filed its income tax returns for the years 1937, 1938, 1939 and 1940 with the collector of internal revenue for the sixth district of California. *73 On or about October 1, 1923, Security Trust & Savings Bank, a corporation, as lessor, and I. Eisner, Irving H. Hellman and E. J. Wightman, as lessees, entered into a certain 99-year lease. Thereafter the lessor conveyed its interest in the lease and the fee of the real property to the petitioner. On February 19, 1924, the lessees assigned their interest in the lease to the Long Beach Holding Corporation, a corporation, and it continued to be the owner of the lessees' interest in the lease up until March 11, 1935, when the lease was terminated by petitioner by reason of the lessees' default in performance of the covenants and conditions thereof. The lease provided, in part, that the lessees should pay as rental the total sum of $3,960,000 in equal monthly instalments of $3,333.33 1/3, and also provided that the lessees would on or before March 1, 1930, construct upon the premises a Class A building costing and reasonably worth, when completed, not less than $350.000; the lease provided that the time for construction of the building might be extended for a period not exceeding five years (not later than March 1, 1935) by the lessees giving sixty days' notice prior to March 1, 1929 *74 "and by the execution and delivery to said lessor of a good and sufficient surety bond by a reputable, solvent bonding company, satisfactory to said lessor, authorized to transact business in the State of California, in the penal sum of $200,000, conditioned for the faithful performance by said lessees of each and every of the terms, covenants and conditions" of the lease and for the construction and completion of the building on or before March 1, 1935. On December 20, 1928, the lessees and each of them gave notice of their election to take the five year extension for the erection of the building and caused to be executed and delivered to petitioner the surety bond required in the lease, executed by I. Eisner, Irving H. Hellman and C. J. Wightman and Long Beach Holding Corporation as principals, and National Surety Company, a corporation of the State of New York, as surety, in the sum of $200,000 as provided in the lease. By reason of the election and giving of the bond, the time for erection of the building was extended to March 1, 1935. The bond reads as follows: "KNOW ALL MEN BY THESE PRESENTS: That we, I. Eisner, Irving H. Hellman, E. J. Wightman and LONG BEACH HOLDING CORP., *75 a corporation, as Principals, and NATIONAL SURETY COMPANY, a corporation of the State of New York authorized to do a general surety business in the State of California, as surety, are held and firmly bound unto STRICKLER COMPANY, a Corporation, in the full and just sum of TWO HUNDRED THOUSAND DOLLARS ($200,000), for the payment whereof, well and truly to be made in lawful money of the United States, the Principals and Surety bind themselves, their heirs, administrators, executors, successors and assigns, jointly and severally, firmly by these presents. * * * *
"NOW, THEREFORE, in consideration of the premises and of such extension, if the said principals shall well, truly and faithfully keep and perform each and every of the terms, covenants and conditions of the said Indenture of Lease on their part to be paid, kept and performed, strictly at the time and in the manner specified in said Indenture of Lease, and particularly if the said Principals shall on or before the 1st day of March, 1935, at 12:00 o'clock M. of said day, construct and complete, on the above described premises, ready for occupancy and free and clear of all mechanics' liens and claims of lien, a "Class A", or *76 its equivalent as buildings are then classified under the police regulations of the City of Long Beach or of the political subdivision of which the present territory of said City of Long Beach then forms a part, store and office, loft or hotel, and, if said principals so elect, in combination therewith, theatre building, of neat and tasty design, with a commodious basement, suitable for the location on which said demised premises are situated, costing reasonably worth when completed not less than THREE HUNDRED FIFTY THOUSAND DOLLARS ($350,000); said building, when so constructed and completed, to be located wholly and entirely on the above demised premises, and to be complete in itself, without reference to or connection with any other building or structure on any than said demised premises; then this obligation to be null and void, otherwise to remain in full force and effect. "PROVIDED, HOWEVER, and this bond is executed by the Surety upon the express condition that its obligation hereunder shall be fully satisfied and discharged when the Principals shall complete said building, ready for occupancy and free and clear of mechanics' liens and claims of liens; it being the intention *77 that the Surety shall not be liable for the performance by the said Principals of any of the terms, covenants and conditions of the said Indenture of Lease after the said building has been so completed, ready for occupancy and free and clear of mechanics' liens or claims of lien, provided the said Principals are not then in default under any of the terms, covenants and conditions of the said Indenture of Lease." On or about June 1, 1934, the National Surety Company was declared insolvent by the Supreme Court of the State of New York, and a liquidator was appointed. On July 20, 1934, the Superior Court, San Francisco County, California, appointed the Insurance Commissioner of California as liquidator of the assets in California of National Surety Company. The lessees named in the lease and their successors failed to cause any building to be constructed upon the leased premises and no building has been constructed thereon. On or about March 11, 1935, petitioner terminated the lease. The petitioner timely filed with the liquidator of National Surety Company its claim in the sum of $200,000, based on the failure of the lessee of erect the building. The claim was disallowed by the liquidator. *78 On petitioner's motion the Superior Court of San Francisco granted an order to show cause against the Insurance Commissioner of California, requiring him to show cause why the petitioner's claim should not be allowed. After a hearing on the merits, the court determined that the petitioner was entitled to a decree establishing that it had a valid and enforceable claim against the assets of the National Surety Company in the sum of $200,000. The court found that as of March 11, 1935 approximately $81,000 was due to petitioner for accrued rents and taxes agreed to be paid by the lessees with interest thereon; that by reason of the failure and refusal of the lessees and the liquidator to make certain repairs, the petitioner was compelled to expend approximately $6,000 for that purpose which was due and owing to it; that no building had been erected and that the difference in value of the premises had a $350,000 building been erected and without such building was $350,000. The court's "Conclusions of Law" were as follows; "I. That by reason of the failure of the lessees of the lease hereinbefore mentioned, and their successors in interest, to keep and perform the covenants thereof upon *79 the part of the lessees to be kept and performed in the payment of the rental reserved thereunder, the payment of taxes, the making of necessary repairs, and the construction of a building thereon in accordance with the terms of said lease, all as hereinbefore found, the petitioner Strickler Company has been damaged in the total sum of $437,555.80; "II. That the petitioner Strickler Company is entitled to an order and decree herein establishing and decreeing that it has a good, valid and enforceable claim against the National Surety Company and the assets thereof, in the sum of $200,000.00, and directing Samuel L. Carpenter, Jr., as Insurance Commissioner of the State of California and liquidator of the National Surety Company in the State of California, to certify to the Superintendent of Insurance of the State of New York, as liquidator of the National Surety Company in the State of New York, that the claim of said Strickler Company in the sum of $200,000 has been duly established by the judgment and decree of this court and that such determination shall be equally binding upon the Superintendent of Insurance of the State of New York as liquidator of the National Surety Company, *80 and the assets of the National Surety Company in his hands or under his control, as upon Samuel L. Carpenter, Jr., Insurance Commissioner of the State of California as liquidator of said National Surety Company in the State of California." An appeal was taken to the Supreme Court of California by the Insurance Commissioner as the California liquidator and pending the hearing thereof a stipulation was entered into between the liquidator of the Surety Company and petitioner, wherein it was agreed that the judgment appealed from be modified so as to reduce the claim of petitioner from $200,000 to $125,000. The judgment was accordingly modified and became final on June 15, 1937. No part of the allowed claim of petitioner was paid during 1937. Payments by the liquidator of National Surety Company on petitioner's claim have been made as follows: Net to
Total
Attorney's
Strickler
Year
Received
Fees
Co.
1938
$12,500.00
$ 3,125.00
$ 9,375.00
1939
43,750.00
10,937.50
32,812.50
1940
6,250.00
1,562.50
4,687.50
1941
6,875.00
1,718.75
5,156.25
1942
3,125.00
781.25
2,343.75
1943
1,500.00
375.00
1,125.00
The Insurance Commissioner of California was *81 the liquidator through whom any payments to petitioner would be made. In 1937 petitioner's secretary and treasurer, W. M. Strickler, inquired of the Insurance Commissioner when the claim or any part of it would be paid. The latter replied that "they had so many judgments against the National Surety Company that it was doubtful how many years it would take to pay off anything." In 1937 there was no reasonable prospect that the obligation would be collectible in full. At that time it was indeterminable when and what portion, if any, of the obligation would be collectible. Petitioner kept its books on the accrual basis of accounting and its income tax returns were filed upon such basis. It did not include in income for its calendar year 1937 any part of the judgment. It included as income in its Federal income tax return for the calendar year 1938 the net amount received by it during that year from National Surety Company liquidator but claim for refund was filed. It did not include as income in its Federal income tax returns for 1939 and 1940 the amounts received in those years from the liquidator. In the notice of deficiency respondent included in income for 1937 the sum of $93,750.00, *82 representing the judgment of $125,000.00 less attorney's fees of 25% paid or to be paid in connection therewith. Respondent has also included in income for the years 1938, 1939 and 1940 the net amounts of cash received by petitioner in the respective years from the liquidator in satisfaction of the claim or judgment. Opinion The first question is: Where petitioner, as lessor, received a surety bond for faithful performance by the lessee of the covenants of the lease, including the covenant to erect a valuable building on the leased property, and after default by the lessee brought suit and obtained a judgment on the bond, does the amount of the judgment rendered against the liquidator of the bonding company constitute taxable income? The recovery in a suit or compromise thereof is taxable income if that which the judgment replaces would have been taxable income. Raytheon Production Corporation v. Commissioner, 144 Fed. (2d) 110. Had the building been erected by the lessees it would have afforded the lessor a benefit with a double aspect. It would have helped to assure the payment of future rentals and, in default thereof, would have provided the *83 lessor in part with a substitute compensation in the form of a more valuable property. The bond assured a cash payment should the lessee fail to erect the building. It partially compensated the lessor for default by lessee in this respect, as well as in others. It is well settled that had the lessees erected the building and then been obliged to give up possession by reason of default, the value of the building would have represented taxable income to the lessor. Helvering v. Bruun, 309 U.S. 461. [1]
This court has further held that it would be ordinary income and not capital gain. Estate of Brant, 44 B.T.A. 1306. The amount received on the bond likewise is ordinary income. It falls squarely within the definition of gross income under Section 22(a) of the applicable Act or Internal Revenue Code, which includes: * * * gains, profits, and income * * * from trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such *84 property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. Nor is the situation altered by the fact that the bond was to be given only in the event of the lessees requesting an extension of time in which to erect the building. The bond provision, appearing in the lease, was part of the price bargained for by the parties for the use of lessor's property. Had the lease provided for a direct payment for extension of time in erecting the building, there is no doubt that such payment would have been taxable income. This is such a payment contingent on failure of performance. The amount of the bond is referred to in some of the documentary evidence as a "penal sum. The use of the word "penalty" is not conclusive of the question as to whether the sum is liquidated damages or a penalty. United States v. Bethlehem Steel Co., 205 U.S. 105, 120. Nevertheless we do not rest the decision on any such distinction between a penalty and liquidated damages. The bond was bargained for as a part of the price for the rental of land. Whether *85 it be termed a penalty or liquidated damages is immaterial. The important consideration is that it is not in the nature of a windfall or penalty imposed by law. Central Railroad Co. of New Jersey v. Commissioner, 79 Fed. (2d) 697, relied on by petitioner, is not in point. In that case the taxpayer corporation had received certain property in settlement of its suit against its executive officer for damages or an accounting for profits earned by corporations formed by him through which he had used his position of trust to secretly carry on business operations adverse to taxpayer's interest. The value of the property was held not to be taxable income arising from the capital or labor of the taxpayer but a "windfall" or "penalty imposed by the law on a faithless fiduciary, a gain granted gratuitously because of the necessity of keeping persons in positions of trust beyond the temptation of double dealing." Insofar as the settlement might be taken to be a substitute for profits which the taxpayer should have earned had the officer been faithful, rather than merely from an accounting under the doctrine that an agent may not profit on transactions with his *86 principal, the case has been adversely criticized. See Magill Taxable Income, (1936) page 340, footnote 30. The "penal" sum in the case at bar, on the other hand, is no windfall or gain granted gratuitously by force of law, but is the payment contracted for by the parties for breach of the conditions of a lease and as such is ordinary income. Hort v. Commissioner, 313 U.S. 28; Warren Service Corporation v. Commissioner, 110 Fed. (2d) 723; Center Investment Company, 43 B.T.A. 46. We turn now to the question as to when this income should be taxed. Petitioner's books were kept on the accrual basis and its income tax returns were filed on that basis. Where the accounts are kept and returns made on an accrual basis it is the right to receive and not the actual receipt that determines the inclusion of the amount in gross income, Spring City Foundry Co. v. Commissioner, 292 U.S. 182, but a taxpayer on the accrual basis can not be charged with income if there exists good reason for believing that the income can not be collected. Corn Exchange Bank v. United States, 37 Fed. (2d) 34; *87 Oregon Terminals Co., 29 B.T.A. 1332; Atlantic Coast Line Railroad Co., 31 B.T.A. 730, 749; American Fork & Hoe Co., 33 B.T.A. 1139, 1149. In Sowers Manufacturing Company, 16 B.T.A. 268, the taxpayer on the accrual basis was not required to accrue as income an allowed claim against the receiver of an insolvent corporation. It was there stipulated that the receiver's estimates of the value of the assets were such that no more than 75 percent of the claim would be recovered and the receivers were unwilling and unable to say when and if further dividends would be paid beyond the 57 per cent of allowed claims already paid. To similar effect see American Central Utilities Company, 36 B.T.A. 688. It was incumbent on petitioner to show that it had a reasonable basis for its belief that the judgment was not collectible in full. In 1934 the National Surety Company was declared insolvent under the New York Insurance law [2] by the New York Supreme Court, and ordered dissolved and a liquidator appointed. The California Superior Court *88 appointed the Insurance Commissioner of the State of California as liquidator of the California assets. Petitioner secured final judgment for $125,000 on its bond on July 15, 1937. No part of this allowed claim was paid in 1937. In 1938 it received $12,500. In subsequent years the payments were as follows: 1939
$43,750
1940
6,250
1941
6,875
1942
3,125
1943
1,500 Thus in the seven years since its claim went to judgment and was allowed petitioner has been paid only $74,000 out of $125,000 or less than 60 percent and the sharply decreasing payments are indicative of the serious doubtfulness of its ever being paid in full. *89 Over objection of respondent, petitioner's secretary and treasurer, W. M. Strickler, testified that in response to his inquiry the Insurance Commissioner of California, liquidator there of National Surety Company, had informed him "that they had so many judgments against the National Surety Company that it was doubtful how many years it would take to pay off anything." This testimony was not objectionable as hearsay evidence for it was not admitted for the truth of the matter asserted but merely to show that the liquidator had made such a statement. Terry v. U.S., 51 Fed. (2d) 49. The fact that petitioner's officer had been so informed by the liquidator of a surety company judicially declared to be insolvent was important to show that petitioner had reasonable basis for its belief that the claim was not collectible in full. The subsequent events in the shape of the sharply declining payments to a low of $1,500 in 1943 when $51,000 was still outstanding substantiate the correctness of the petitioner's belief that the obligation would never be collected in full. See American Fork & Hoe Company, supra.We think petitioner *90 has sufficiently demonstrated the reasonableness of its belief and that it may only be charged with income on this claim in the years of actual receipt. Decision will be entered under Rule 50.
Footnotes
1. But Cf. Section 115 (a) of the Revenue Act of 1942 applicable to taxable years beginning after December 31, 1941.↩
2. McKinneys Consolidated Laws of N. Y. Insurance Law, § 93. Insolvency of an insurer. Whenever the superintendent finds from a financial statement made by any authorized insurer or from a report on examination of any such insurer, that such insurer is unable to pay its outstanding lawful obligations as they mature in the regular course of business, as may be shown either by an excess of its required reserves and other liabilities over its admitted assets, or by its not having sufficient assets to reinsure all of its outstanding risks with other solvent authorized assuming insurers after paying all accrued claims owned by it, such insurer shall be deemed insolvent. * * *↩