The Morco Corporation, successor to Oceanic Investing Corporation v. Commissioner.
Morco Corp. v. Commissioner
Docket No. 71022.
United States Tax Court
T.C. Memo 1961-57; 1961 Tax Ct. Memo LEXIS 289; 20 T.C.M. (CCH) 305; T.C.M. (RIA) 61057; February 28, 1961
*289 John J. Costello, Esq., 70 Broadway, New York, N. Y., and Hewitt A. Conway, Esq., for the petitioner. William F. Chapman, Esq., for the respondent. MURDOCK Memorandum Opinion MURDOCK, Judge: The Commissioner mailed a notice of deficiency addressed to "THE MORCO CORPORATION, successor to Oceanic Investing Corporation," stating, "The determination of your income tax liability for the taxable years ended April 30, 1951 and April 30, 1952 disclosed deficiencies in tax" in the amounts of $124.35 for fiscal 1951 and $2,080 for fiscal 1952. The taxpayer during the taxable years was Oceanic Investing Corporation. Morco owned all of the stock of Oceanic and a plan of complete liquidation and dissolution of Oceanic was adopted on September 29, 1954, after which the assets of Oceanic were transferred to Morco. The petition purports to be that of both corporations. An order has been entered dismissing the proceeding for lack of jurisdiction insofar as it purports to be the petition of Oceanic, although the parties raise no question about any of these matters. The only issue for decision is whether a net operating loss deduction stemming from a stipulated loss on the sale of *290 property is allowable for the fiscal year 1952. The Commissioner determined that this loss was incurred in the tax year ended April 30, 1955, from which, concededly, there could be no carryback to 1952. The petitioner claims the loss was incurred in the fiscal year 1953 or, alternatively, in the fiscal year 1954. The facts have been introduced by stipulation and are found as stipulated. Oceanic Investing Corporation, herein called Oceanic, is a New York corporation. It filed its returns for the years involved herein with the collector of internal revenue for the Third District of New York. A cash receipts method was used in filing those returns. It did not claim the loss in question on any return prior to its return for 1955. Oceanic, as owner of premises at Fifth Avenue and 46th Street in New York City entered into a 99-year lease of those premises on August 1, 1952, with Fifth Avenue & 46th Street Corporation, referred to herein as lessee. A title company certified on July 31, 1952, that Oceanic had good title to the premises. The lessee was to pay rent at the annual rate of $175,000 after December 1, 1954. Oceanic was to receive and did receive the net rents from the existing *291 buildings pending their demolition. The lessee assumed all obligations and expenses in operating the property and agreed to demolish the buildings thereon by November 1, 1953, and to erect new ones by December 1, 1954. Demolition began on July 5, 1953. Oceanic entered into a contract on October 24, 1952, to sell its property at Fifth Avenue and 46th Street, subject to the longterm lease, to Gift and Art Centre Corporation, herein called purchaser. This was, as the petitioner concedes as to form, an executory contract to sell in the future. The stated purchase price was $2,950,000, payable $50,000 down, $50,000 July 15, 1953, $100,000 November 1, 1953, or sooner, and the balance December 1, 1954, or sooner. Title was to be conveyed upon payment of the full purchase price. The contract was amended on January 18, 1954, to increase the purchase price to $2,958,361.10 and to defer a payment originally due November 1, 1953, to December 1, 1954. The contract was further amended on November 24, 1954, to defer payment of $2,858,361.10 from December 1, 1954, to April 1, 1955. Purchaser paid on the purchase price $50,000 on October 24, 1952, $50,000 on November 30, 1954, and $2,855,950.69 *292 on April 29, 1955, which was the day the parties closed their transaction of sale. A loss from a sale of real estate can be deducted before the full purchase price has been paid where the loss is "reasonably certain in fact and ascertainable in amount" - where "there has been such substantial performance of conditions precedent as imposes upon the purchaser an unconditional duty to pay." Cf. Lucas v. American Code Co., 280 U.S. 445; Lucas v. North Texas Lumber Co., 281 U.S. 11; Walter M. Hort, 39 B.T.A. 922, affd. 112 F. 2d 167, affd. 313 U.S. 28. The petitioner also cites Commissioner v. Segall, 114 F. 2d 706, reversing 38 B.T.A. 43. The facts in the Hort case were that, in addition to a contract to sell, deeds to the properties had been delivered, security for the unpaid purchase price had been posted, and the purchaser had taken possession. The stipulated facts do not bring the present loss within that line of cases prior to the fiscal year 1955, in which year the Commissioner has determined it is deductible. The petitioner contends that there was a closed transaction giving rise to *293 a deductible loss on October 24, 1952, when the contract was signed and $50,000 was paid on account. Nothing took place thereafter in fiscal 1953 or fiscal 1954 to further fix the loss. No further payment on the purchase price was made until fiscal 1955. The contract was amended in fiscal 1954 and again in fiscal 1955. The first amendment increased the purchase price, a necessary factor in computing the loss. The second amendment deferred payment of $2,858,361.10 of the purchase price until April 1955. Only $50,000 of the purchase price was actually paid prior to fiscal 1955 and it was forfeitable upon default. The delays were apparently due to the fact that the purchaser was having difficulty raising the cash to pay the purchase price. The petitioner says, "The truth of the matter is that Purchaser did not have the financial liquidity to pay for Oceanic's interest immediately." $2,858,361.10 of the $2,958,361.10 purchase price was not paid prior to April 1955, and the closing and delivery of title papers did not occur until April 29, 1955. The purchaser had not taken possession either directly or through the lessee prior to April 29, 1955, nor had it the burdens or benefits of ownership *294 prior to that date, despite the clear title and willingness of Oceanic to deliver upon payment of the full purchase price. Other evidence further confirms the conclusion that Oceanic, or the petitioner after September 29, 1954, continued as owner of the properties until the deal was closed on April 29, 1955, and that no loss became "reasonably certain in fact" until that time. Cf. Lucas v. North Texas Lumber Co., supra.
Decision will be entered for the Commissioner.